United States Bankruptcy Court Southern - Texas
ENTERED
12/01/2015

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE | ) |
| THEODORE M. HERRING, JR., CARMEN W. DAWSON | ) CASE NO. 13-32914-H3-7 |
| Debtors, | ) |

MEMORANDUM OPINION

The court has held a trial on "Heron Lakes Estates Owners Association's Objections to Exemptions Claimed on Debtors' Amended Schedule C" (Docket No. 45). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Theodore M. Herring, Jr. ("Herring") and Carmen W. Dawson ("Dawson"), collectively referred to as "Debtors," filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code on May 9, 2013.

In the instant objection, Heron Lakes Estates Owners Association ("Heron") objects to Debtors' exemption of four tracts of real estate in Michigan, a whole life insurance policy, an entity called North Houston Women's Medical Center, LLC, and

five vehicles, on grounds the exemptions claimed exceed the statutory limits under Section 522(d).[1] (Docket No. 45).

Debtors amended their schedule C on May 27, 2014. The amended schedule C does not address the subject matter of Heron's objections. Heron continues to object. At the hearing on the instant objection, counsel for Heron argued that Heron now seeks only a determination that the Theodore M. Herring, Jr. Family Limited Partnership, CCC is not exempt.

Debtors scheduled as exempt real property: a home located at 11107 W. Cyrus Dr., in the Heron Lakes Estates subdivision, with a value of zero identified for Debtors' interest, under Section 522(d)(1); a second home, located at 7703 Heron Lakes Dr., also in the Heron Lakes Estates subdivision, with a value of zero identified for Debtors' interest, under Section 522(d)(5); three lots in the Heron Lakes Estates subdivision, with a value of zero identified for Debtors' interest, under Section 522(d)(5); four lots in Michigan, with a value of $1,281.00 identified for Debtors' interest, under Section 522(d)(5), and an unnumbered lot ("0 Heron Lakes") in the Heron Lakes Estates subdivision, with a value of $9,128.00 identified for Debtors' interest, under Section 522(d)(5). (Docket No. 50).

---

[1]All section references in this opinion are to the Bankruptcy Code.

In their amended schedule C filed on May 27, 2014, Debtors scheduled as exempt personal property, inter alia,: the Theodore M. Herring, Jr. Family Limited Partnership, CCC, (the "FLP CCC"), with a value of zero identified for Debtors' interest, under Section 522(d)(3). Debtors' description of the FLP CCC states that it was used to invest in properties. Debtors state in their Schedule C that the FLP CCC owns the four Michigan lots, and the 0 Heron Lakes property, as well as a 1991 BMW 850i, and a 1973 Rolls Royce. (Docket No. 50).

Debtors also scheduled as exempt personal property a 2011 Toyota Camry, with a value of zero identified for Debtors' interest; and a 2005 Mercedes Benz S430, with a value of zero identified for Debtors' interest; under Section 522(d)(2). Debtors scheduled a 1990 Mercedes Benz SL, with a value of zero identified for Debtors' interest; under Section 522(d)(5). (Docket No. 50).

Debtors scheduled a whole life insurance policy, asserting the policy has zero cash value, as exempt under Section 522(d)(7). (Docket No. 50).

As to the real property located at 11107 W. Cyrus, Herring testified that Debtors assert the value of the property is $224,000. He testified that, on the petition date, Wells Fargo held a mortgage on that property, and was owed $182,562. He testified that Debtors presently reside at the property at

11107 W. Cyrus.

As to the real property located at 7703 Heron Lakes, Herring testified that Debtors assert the value of the property is $324,097. He testified that, on the petition date, Bank of America held a mortgage on that property, and was owed $310,471.

Herring testified that Debtors listed the 7703 Heron Lakes property, which has remained under construction since prior to the date of filing of the petition in the instant case, for sale. He testified that the initial listing price for the property was $575,000. He testified that Debtors subsequently lowered the listing price to $450,000. He testified that there have been no offers to purchase the property.

Heron introduced into evidence listings for sale of properties located at 11110 W. Cyrus and 7322 Heron Lakes, both of which are within one block of the property located at 7703 Heron Lakes. The listing for 11110 W. Cyrus reflects a listing price of $285,000, or $68.54 per square foot. (Heron Exhibit 34). The listing for 7322 Heron Lakes reflects a listing price of $269,000, or $73.54 per square foot. (Heron Exhibit 35). Heron introduced into evidence a comparative market analysis. The comparative market analysis identifies sales of property, inter alia, at 7726 Heron Lakes, for $227,000, or $70.54 per square foot, and at 7707 Heron Lakes, for $247,000, or $66.44 per square foot. (Heron Exhibit 36). Debtors' listing for sale of

7703 Heron Lakes identified the square footage of the property to be 4,673. (Heron Exhibit 29). Applying the range of sale and listing prices per square foot to the size of the property at 7703 Heron Lakes indicates a range of values of $310,474.12 to $343,652.42. The court finds that Herring's estimate of $324,097 for the value of the property is reasonable.

Herring testified that he believes Debtors have no equity in either the 11107 W. Cyrus property or the 7703 Heron Lakes property, because the Internal Revenue Service ("IRS") has a tax lien against Debtors' interest in the properties. Herring asserted that the lien secures a debt of approximately $500,000. There is not a notice of tax lien in evidence. However, the court takes judicial notice of the proof of claim filed by IRS. The proof of claim asserts a claim on behalf of IRS in the total amount of $684,502.02, of which IRS asserts $42,451.79 is secured by a notice of tax lien filed in Harris County, Texas.[2]

As to the Michigan real property, Herring testified that Debtors listed a value of $1,281 based on a tax assessment of the four lots.

The court has admitted into evidence an appraisal of the four lots, performed by Steven M. Crowe, a certified residential appraiser in Michigan. Based on comparable sales,

[2]The court takes judicial notice that the properties at 11107 W. Cyrus and 7703 Heron Lakes are in Harris County, Texas.

Crowe determined that the value of the property is $17,000.

Herring testified that he believes the sales analyzed by Crowe are not comparable, because they are on the other side of a lake from the properties owned by Debtors.

The court has reviewed the appraisal report prepared by Crowe. The appraisal report shows a map of the property. The map reflects that there are three sections of lake, running east to west, separated by narrow channels. There is also a fourth section, south of the center section of the group running from east to west, connected by a narrow channel. The subject property is south of the group running from east to west, between the fourth section and the east section. The first sale comparison, for $18,000, is of property north of the group running from east to west. The second sale comparison, for $13,000, is for property east of the east section of the lake. The third sale comparison, for $19,900, is for property south of the group running from east to west, between the fourth section and the west section. (Heron Exhibit 23). The court finds, for the purpose of the instant contested matter, that the value of the Michigan lots is $17,000.

As to the 0 Heron Lakes property, Susan Grossman, treasurer of Heron, testified that the property is a strip of property between Debtors' home and a lake. The only evidence before the court as to the value of the 0 Heron Lakes property is

Debtors' scheduled value of $9,128.00. (Heron Exhibit 2).

Herring testified that the FLP CCC owns the Michigan property, and two automobiles, a 1991 BMW 850i, and a 1973 Rolls Royce. He testified that neither the BMW nor the Rolls Royce is operable. He testified that his son is repairing the BMW. He testified that the Rolls Royce is in his garage.

Herring testified that he believes the value of the 1991 BMW 850i is $1,000. Heron introduced into evidence an NADA Guide for a 1991 BMW 850i. According to the NADA Guide, a retail value for a 1991 BMW 850i should range from a low of $7,150 to a high of $24,700. The NADA Guide has a description of the type of vehicle that would qualify for a "low retail" value of $7,150. The description is of a vehicle in mechanically functional condition, needing only minor reconditioning. (Heron Exhibit 20). Herring introduced into evidence photographs of the 1991 BMW 850i. The photographs show extensive mechanical damage and a need for major reconditioning. (Debtors' Exhibit 6). The court finds that the value of the 1991 BMW 850i is $1,000.

Herring testified that he believes the value of the 1973 Rolls Royce is $3,000. Heron introduced into evidence an NADA Guide for a 1973 Rolls Royce Corniche coupe. According to the NADA Guide, a retail value for a 1973 Rolls Royce should range from a low of $12,900 to a high of $32,700. The NADA Guide describes a vehicle that would qualify for a "low retail" value

of $12,900 as a vehicle in mechanically functional condition, needing only minor reconditioning. (Heron Exhibit 18). Herring introduced into evidence photographs of the 1973 Rolls Royce. The photographs show exterior and interior wear, but do not address the mechanical condition of the vehicle. (Debtors' Exhibit 5). The court finds that the value of the 1973 Rolls Royce is $7,500.

Herring testified that Debtors drive the 2011 Toyota Camry, and the 2005 Mercedes Benz S430 on a daily basis. He testified that the 1990 Mercedes Benz SL has been repossessed by a paint shop.

No evidence was presented as to the whole life insurance policy.

<u>Conclusions of Law</u>

Under Bankruptcy Rule 4003(c), on an objection to exemptions, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections. Fed. R. Bankr. P. 4003(c).

Section 522(d) of the Bankruptcy Code, as it was in effect on the petition date, provided in pertinent part for the exemption of:

> (1) The debtor's aggregate interest, not to exceed $22,975 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the

> debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
>
> (2) The debtor's interest, not to exceed $3,675 in value, in one motor vehicle.
>
> (3) The debtor's interest, not to exceed $575 in value in any particular item or $12,250 in aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.
>
> * * *
>
> (5) The debtor's aggregate interest in any property, not to exceed in value $1,225 plus up to $11,500 of any unused amount of the exemption provided under paragraph (1) of this subsection.
>
> * * *
>
> (7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

11 U.S.C. § 522(d).

The dollar limits of exemptions in Section 522(d) apply separately with respect to each debtor in a joint case. 11 U.S.C. § 522(m).

A federal tax lien applies to all of the Debtors' property. 26 U.S.C. § 6321. Property exempted remains liable for a tax lien, notice of which is properly filed. 11 U.S.C. § 522(c)(2)(B). The court infers from IRS' proof of claim, for the purpose of the instant contested matter, that IRS has filed a timely notice of federal tax lien in Harris County, Texas, with respect to the taxes identified as secured in IRS' proof of

claim, in the amount of $42,451.79.

In the instant case, Herring's testimony establishes that, Debtors had no equity in their residence at 11107 W. Cyrus. Debtor's interest, net of the mortgage, of $41,438 ($224,000 less $182,562), is less than the $42,451.79 amount of IRS' tax lien. The amount of $1,013.79 remains on IRS' lien, after applying the value of Debtors' interest in the residence. Thus, the full amount remains unused from Section 522(d)(1).

Under Section 522(d)(5), Debtors together were entitled to exempt $2,450, plus $23,000 of the unused amount under 522(d)(1). for a total of $25,450. The property which Debtors assert to be exempt under 522(d)(5) includes the home at 7703 W. Cyrus, three unimproved lots in the Heron Lakes Estates subdivision,[3] the Michigan lots, the 0 Heron Lakes property, and the 1990 Mercedes Benz.

The value of Debtors' interest in the property at 7703 W. Cyrus, net of the mortgage, is $13,622.88. That value is reduced by the remaining $1,013.79 amount of IRS' lien, for a value of $12,609.09. The value of Debtors' interest in the Michigan lots is $17,000. The value of Debtors' interest in the 0 Heron Lakes property is $9,128. The court concludes that the

[3]The court notes that two of these are asserted to be owned by Laverne Williams, the mother of Dawson. In a separate adversary proceeding, Adv. No. 14-3170, Trustee is seeking recovery of those two unimproved lots.

value of Debtors' interest in property exceeds the amount of exemption available under Section 522(d)(5), even without taking into consideration whether Debtors retain an interest in the three unimproved lots and the 1990 Mercedes Benz.

Debtors' interest in the FLP CCC is not an interest in "household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." Neither are the assets of the FLP CCC such items. The court concludes that the FLP CCC is not exempt under Section 522(d)(3). Rather, the court must analyze whether the exemption available under Section 522(d)(5) is sufficient for exemption of the FLP CCC. As set forth above, the aggregate value of the assets Herring identified as being property of the FLP CCC (the Michigan lots, the 1991 BMW 850i, and the 1973 Rolls Royce) is $25,500. The court has previously concluded that Debtors' asserted exemptions under Section 522(d)(5) exceed the allowable limit. The court's analysis in reaching that conclusion included the Michigan property, but did not include either of the two vehicles. Whether the Michigan property is separately claimed as exempt, or is held by the FLP CCC, the court concludes that Debtors' claimed exemptions exceed the allowable limit under Section 522(d)(5).

Because the Debtors do have some exemptions available under Section 522(d)(5), the court will permit Debtors to designate, in light of the values found for the assets in the instant Memorandum Opinion, which assets to exempt under Section 522(d)(5).

With respect to Heron's objection under Sections 522(d)(2) and 522(d)(7). Heron did not present evidence sufficient to meet its burden of proof.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on this 30 day of Nov, 2015.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE